**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| CARLTON G. SUTTON, ) | |
| SUTTON CONSTRUCTION & ) | |
| DRYWALL SERVICES, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:07cv497-MHT-TFM |
| ) | |
| AMERIS BANKING COMPANY d/b/a ) | |
| AMERIS BANK, MARVIN DANZEY, ) | ***ORAL ARGUMENT REQUESTED*** |
| HARRIS O. PITTMAN, III, ) | |
| ) | |
| Defendants. ) | |
| ) | |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**</u>

COME NOW Defendants Ameris Banking Co., Marvin Danzey, and Harris O.

Pittman, III, by and through their undersigned counsel, and hereby submit this opposition

to Plaintiffs Carlton G. Sutton and Sutton Construction & Drywall Services, Inc.'s

("Plaintiffs") Motion to Remand.

I.    <u>**INTRODUCTION**</u>

A.    **PLAINTIFFS SUBMIT NO AFFIDAVITS AND NO EVIDENCE.**

Plaintiffs have failed to address the majority of issues raised in Defendants'

Notice of Removal and have offered no evidence or legal authority upon which to base

any actionable claim against resident Defendants Pittman and Danzey.[1]

---

[1] Plaintiffs have failed to show how they could prove any set of factual circumstances that would entitle them to relief. *See*, *EB Investments, L.L.C. v. Atlantis Development, Inc.*, 930 So.2d 502, 507 (Ala. 2005); *Pearce v. Schrimsher*, 583 So. 2d 253, 253-54 (Ala. 1991).

### B.    PLAINTIFFS DO NOT ADDRESS ANYTHING BUT FRAUD AND SUPPRESSION.

Plaintiffs submitted no evidence to contradict the affidavits of Defendants Pittman or Danzey and do not even argue that they have stated a "colorable claim" for deceit, negligence, wantonness, willfulness, breach of fiduciary duty, conversion, or breach of contract. While these matters have already been address in Defendants' Notice of Removal, they will also be briefly addressed herein below.

Plaintiffs merely argue for remand on the issue of fraud and suppression, yet continue in their failure to plead fraud with particularity and state no facts that would support *any* actionable cause for fraud and/or suppression against the non-diverse Defendants. The end result is that the Plaintiffs seek remand on only two issues: 1.) the amount in controversy; and 2.) Plaintiffs' assertion that a "colorable" claim has been stated for fraud and suppression. As will be seen herein below, both arguments fail. Plaintiffs have also totally failed to contradict the sworn testimony of Danzey and Pittman who testify that they made no representations to Plaintiffs regarding "discrepancies" in their accounts and that they have no duties at the bank to handle the Plaintiffs' loan accounts.

### C.    THE AMOUNT IN CONTROVERSY.

Plaintiffs' *potentially* viable argument for remand regarding the amount in controversy not exceeding the jurisdictional limits is disingenuous, and the Plaintiffs' Motion to Remand fails to stipulate that the amount in controversy will be less than $75,000, despite having been requested to do so. This would have been the most simple and straightforward way to demonstrate to this honorable court that there was less than

$75,000 at issue. The failure of Plaintiffs' argument in this regard will also be addressed herein below.

Furthermore, Defendants have produced evidence that Plaintiffs' various loans were consolidated into a $223,557.15 loan in 2005. This is the only contract between Plaintiffs and any of the Defendants, and it is this contract that Plaintiffs appear to claim Ameris Bank breached. In their breach of contract count, Plaintiffs' allege that Ameris Bank "failed to provide and/or perform adequate, reasonable, and/or competent service for Plaintiffs" and that Ameris "failed to reasonably and adequately procure, obtain, handle, maintain and/or otherwise oversee bank accounts, loans and/or other financial services, as well as monies, funds, and/or terms therin. . ." (Complaint, pp. 16-17, ¶¶ 3-4). There is no limitation or qualification as to the specific amount of "monies" or "funds" in the contract that Ameris Bank is alleged to have breached. While Plaintiffs have attempted to "limit" their claim to alleged "mishandled" or "misapplied" payments, Plaintiffs still fail to state what that amount is alleged to be. Furthermore, the entire $223,557.15 refinance was "handled" in such a way that the money was "applied" to Plaintiffs' three previous loans with the bank. Plaintiffs' Complaint make no limitation on the amounts claimed to have been "mishandled" or "misapplied." Thus, it appears from the Complaint, that the amount in controversy on the breach of contract count is at least $223,557.15.

In addition, Plaintiffs have made payments on various loans with Ameris Bank since January 2004 of at least $38,175.00, have made payments on various other accounts with Ameris Bank of at least $12,098.75, and have directed that monies in the amount of $65,120 in their refinance be applied towards a loan by Jimmy Danner d/b/a SCSI. (See

Affidavit of Glenda Williams, ¶¶ 4, 5, & 7, attached hereto as Exhibit "1"). These figures are calculated without including the Plaintiffs' claims for "anxiety, worry, humiliation, mental and emotional distress and other incidental damages." (Complaint, p. 7, ¶ 5.d.). Further, Plaintiffs specifically claim a right to recover *interest* and to recover *punitive damages*. (Complaint, pp. 17 & 21, ¶ 3). Defendants submit that such claims for mental anguish, interest, and punitive damages are not made to ensure that Plaintiffs' damage claims are limited to $75,000, but to ensure that the Plaintiffs may seek recovery *well in excess* of $75,000. Thus, the clear preponderance of the evidence shows that the amount in controversy more likely than not exceeds the jurisdictional minimum of this Court.

### D.     THE FRAUDULENT JOINDER OF DANZEY AND PITTMAN.

Nothing submitted by Plaintiffs contradicts the fact that Plaintiffs have fraudulently joined Pittman and Danzey as defendants in this cause. The fraudulent joinder is a vain attempt to defeat federal diversity jurisdiction because there is absolutely no possibility that the Plaintiffs can establish any cause of action against them. While Plaintiffs have alleged that they have stated "colorable"[2] fraud and suppression claims by using the following language in the Complaint: "Defendants PITTMAN and DANZEY misrepresented to Plaintiffs that they *would* take care of the discrepancies and that they *would* thereafter properly apply payments to Plaintiffs' loan," it is clear that no claim for fraud has been stated. (See Complaint, pp. 5, ¶ 9) (emphasis added). Noticeably absent from Plaintiffs' fraud allegations are the required particularities with regard to (1) time,

---

[2] Plaintiffs never attempt to describe how their claim is "colorable" other than to restate the deficient language of the Complaint. Furthermore, Plaintiffs misconstrue the standard, which requires more than just looking at the face of the complaint, but requires the Court to consider whether there is a reasonable "possibility" that Plaintiffs could establish a cause of action against the resident Defendants on the claims alleged. *See*, *Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp. 2d 1228, 1232 (M.D. Ala. 2004).

(2) place, (3) the contents or substance of the false representations, (4) the facts misrepresented, and (5) an identification of what has been obtained. *See*, *Smith v. National Sec. Ins. Co.*, 860 So. 2d 343, 346-47 (Ala. 2003). Plaintiffs have also totally failed to specify any particular wrongdoing by either Danzey or Pittman *individually*. Not only do Plaintiffs fail to distinguish between the Defendants Pittman and Danzey in all of the allegations stated in the Complaint, but Plaintiffs also fail to distinguish between the non-diverse Defendants and the fictional Defendants throughout each and every allegation of the Complaint. (See generally, Complaint).

## II.    DISCUSSION

### A.    NO DISPUTE OF AFFIDAVITS.

Plaintiffs have completely and totally failed to offer *any* evidence to contradict the affidavits of Marvin Danzey and Harry Pittman. No allegations that Plaintiffs have made in their Motion to Remand and in their Complaint have been supported by anything other than conjecture. Defendants Danzey and Pittman have submitted affidavits that they never made any representation as to how payments would be handled, maintained, or overseen. Plaintiffs have offered nothing. In this Court's analysis and evaluation of the Defendants' claim of fraudulent joinder in the context of the Plaintiffs' Motion to Remand, this failure alone is sufficient for this Court to deny remand. *See*, *Legg v. Wyeth*, 428 F.3d 1317, 1322-23 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs [on a Motion to Remand], *the court cannot then resolve the facts in the Plaintiffs' favor* based solely on the unsupported allegations in the Plaintiffs' complaint.") (emphasis added); *Moses v. Allstate Indemnity Co.*, 2006 WL 1361131, *4 (M.D. Ala. 2006) ("'[W]e resolve factual controversies in favor of the non[removing]

party, but *only* when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the non[removing] party could or would prove the necessary facts.*'") (quoting *Legg*, 428 F.3d at 1323 and *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)) (emphasis original). On a motion to remand, only *disputed* facts will be resolved in favor of a non-removing party. *Id.* Plaintiffs have offered nothing of substance in their argument on remand, and argument alone is not sufficient. Thus, Plaintiffs' allegations totally lack the requisite evidentiary basis for this Court to even consider on Plaintiffs' motion.

Both Danzey and Pittman specifically state that no representations have ever been made to Plaintiffs by them regarding the "handling" of their accounts and that there was no discussion or interaction regarding any "discrepancies" in Plaintiffs' accounts. (See Pittman Aff., ¶¶ 8 & 11; Danzey Aff., ¶¶ 5 & 7). Danzey categorically swears that, "Sutton never had any discussion regarding any alleged 'discrepancies' on his accounts with me." (Danzey Aff., ¶ 7). Danzey also testified that he is merely a collector and simply has no involvement in the handling or management of any of Plaintiffs' accounts. (Danzey Aff., ¶ 8). His sole limited role was to tell Mr. Sutton when a payment was past due. (Danzey Aff., ¶ 5).

Pittman also testified that he had very limited contact with the Plaintiffs. (Pittman Aff., ¶ 8). Moreover, his duties at the bank do not include anything related to the handling or application of funds to the Plaintiff's account. (Pittman Aff., ¶ 7). He never made any representations to, or agreement with, Sutton and swore that he knows of no

facts that would support an allegation that any funds were mishandled or misapplied. (Pittman Aff., ¶¶ 10 & 11).

As stated herein above, this failure to contradict the affidavits of Danzey or Pittman with anything other than Plaintiffs' own *unsupported allegations* is fatal. Plaintiffs fail to show that there is any claim or cause of action alleged in their complaint on which they can prove any set of circumstances that would entitle them to relief. *EB Investments, L.L.C. v. Atlantis Development, Inc.*, 930 So.2d 502, 507 (Ala. 2005). They fail in their attempt to show that Danzey or Pittman are in any way appropriate defendants or have been included in this lawsuit for any other reason except in a vain attempt to defeat diversity. Both have been fraudulently joined and Plaintiffs' Motion to Remand should be denied.

**B.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.**

Like Plaintiffs' Complaint, Plaintiffs Motion to Remand completely fails to state how much money Plaintiffs claim Defendants have misapplied or how much damages Plaintiffs claim to have been caused as a result of any alleged mishandling of payments. As stated in the Notice of Removal, just because Plaintiffs fail to state exactly how much they are claiming they seek in damages does not mean that they can thereby prevent removal. Instead, the Defendants bear a lower burden to show by a preponderance of the evidence "that the amount [in controversy] *more likely than not* exceeds the [$75,000] jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996) (emphasis added). It certainly would have been simple enough for Plaintiffs' attorneys to limit recovery to less than $75,000, but they chose not to take that

course—most likely because the amount in controversy actually does *exceed* $75,000.[3] From the matters alleged, from Plaintiffs' failure to concede recovery of less than $75,000, and from the promissory note attached to the Notice of Removal, the preponderance of the evidence shows that the amount in controversy "more likely than not" exceeds $75,000.

Plaintiffs' Complaint alleges, "misappl[ication]" or "mishandl[ing]" of Plaintiffs' loans dating back to 2004. Plaintiff Sutton had at least three loans in 2004 with Ameris Bank. The amount of $223,557.15 was applied towards refinancing Plaintiffs' loans in the amounts of $70,000, $79,000, and $78,000 in 2005. (See Promissory Note). At least $65,000 of the $223,557.15 went towards payment on a loan by Jimmy Lamar Danner, d/b/a SCSI, a sole proprietorship. (See Williams Aff., ¶ 7). Additionally, Plaintiffs have made payments since January 1, 2004 of at least $38,175.00 on the promissory note. (See Williams Aff., ¶ 4). Plaintiffs have paid *at least* an additional $12,098.75 on the other various notes with Ameris Bank.[4] (See Williams Aff., ¶ 5). Thus, the amount in controversy is *at least* $115,393.75. This amount is calculated even before any allowance for "anxiety, worry, humiliation, mental and emotional distress," "interest," and "punitive damages" is figured in to the amount in controversy. In addition, Judge Thompson has recently stated that this Court may consider as evidence the fact that Plaintiffs refuse to

---

[3] The Plaintiffs have apparently tried to "skirt" this issue by asserting that they are not talking about the amount of the promissory note, but only the amounts paid that have been mishandled. Significantly, however, Plaintiffs are not seeking damages for anxiety, worry, humiliation, mental and emotional distress, interest, and punitive damages to *limit* their recovery, but to increase any possible recovery well in excess of $75,000.

[4] Ameris Bank is diligently researching and reviewing its records, some of which have been stored offsite, to attempt to determine the total amount paid by Plaintiffs on various loans with Ameris Bank since January 1, 2004. So far, Defendant Ameris Bank has been able to verify that at least $50,273.75 has been received by Ameris Bank since that date, and Defendants expect that, as additional documents are reviewed, that amount will increase. Additionally, as set out above, Plaintiff Sutton directed that $65,120.00 of the loan proceeds from the $223,557.15 note be paid on the Danner loan.

agree to limit their judgment to less than $75,000.  *See*, *Alexander v. Captain D's, LLC*, 437 F. Supp. 2d 1320, 1323 (M.D. Ala. 2006).  Therefore, it is more likely than not that a minimum of $75,000 is in dispute in the instant case.

## C.    NO POSSIBLE CAUSE OF ACTION AGAINST RESIDENT DEFENDANTS.

### 1.    Plaintiffs Have Failed to Plead Fraud with Particularty.

Plaintiffs' Motion to Remand has addressed only two counts of their Complaint—fraud and suppression.[5]  Plaintiffs argue that under "well-established Alabama law," that they have stated a "'colorable' cause of action for fraudulent misrepresentation or suppression of pertinent information against Defendants Pittman and Danzey."  (Motion to Remand, p. 9).  Plaintiffs do not define what they mean by "colorable" cause of action in the instant case and Plaintiffs fail to provide any citation or reference to even a single authority or Alabama case law, let alone any "well-established" Alabama law anywhere in their brief.

The fact is that the "well-established Alabama law" actually shows that Plaintiffs have *not* stated even a colorable claim against Defendants.  In Alabama, it is very clear that allegations of fraud and suppression must set forth the alleged facts with *particularity*, to include a minimum of "time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained."  *Smith*, 860 So. 2d at 346-47 (citing the comments to Rule 9 of the Alabama Rules of Civil Procedure).  *See also*, *McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Service, Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001); *Gordon v. Pfizer, Inc.*, 2006 WL 2337002, *3 (N.D. Ala. 2006) ("The Complaint fails to specify time,

---

[5] It appears that Plaintiffs have conceded that no claim for relief has been stated against Pittman or Danzey for negligence/wantonness/willfulness, conversion, breach of fiduciary duty, or breach of contract.

place, content or speaker of *any* particular representations by [the resident defendant].").

A plaintiff must further show how he or she relied on the representation to his or her

detriment.

> Alabama court rules, like the Federal Rules of Civil
> Procedure, require that fraud be averred with particularity.
> *See* Ala. R. Civ. P. 9(b). In the context of Ala.Code § 6-2-3,
> Rule 9(b) requires that a plaintiff aver the circumstances
> and events constituting the fraudulent concealment. *See*
> *Mixon v. Cason,* 622 So.2d 918, 920 (Ala.1993). A plaintiff
> must "use more than generalized or conclusory
> statements when setting out the allegations of fraud." *Lyde*
> *v. United Ins. Co.,* 628 So.2d 665, 670 (Ala.1993). The
> purpose of the particularity requirement is to give fair
> notice to a defendant of the substance of the charges. *See*
> *Caron v. Teagle,* 345 So.2d 1331, 1333 (Ala.1977).

*Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1283-84 (11th Cir. 2006).

It is beyond argument that no claim for fraud has been made by Plaintiffs in the

instant case. Plaintiffs' Complaint contains no allegation regarding the time or place of

the alleged representations. Plaintiffs completely fail to allege the content of what was

allegedly misrepresented and there is not even an attempt to allege "what has been

obtained."[6] Furthermore, Plaintiffs fail to distinguish which Defendant made what

statement as required by Rule 9. *McAllister Towing & Transp. Co., Inc.*, 131 F. Supp. 2d

at 1302 ("Federal Rule of Civil Procedure 9(b) requires a plaintiff in pleading fraud to

distinguish among defendants and specify their respective role in the alleged fraud.").

Ultimately, Plaintiffs' assertion that they have stated a "colorable" claim for fraud

and suppression against the Defendants Danzey and Pittman "begs the question," is made

---

[6] The statement in the Complaint that Defendants "misrepresented . . . that they *would* take care of the discrepancies" is as vague as if it had not been made. In addition, the allegation provides no means by which Defendants can even begin to formulate a defense. Finally, as addressed in more detail above, Defendants Pittman and Danzey specifically deny having any such conversations with the Plaintiffs or making any representations whatsoever.

without legal authority, and is not supported by the allegations in the Complaint, much less by any evidentiary submission. Plaintiffs have stated no claim for fraud or suppression upon which relief can be granted against Pittman or Danzey and thus have stated no claim *at all* against the non-diverse defendants. As such, Pittman and Danzey have been fraudulently joined as defendants to the subject action. Although not addressed in their Motion to Remand, Plaintiffs have also failed to address the other counts of their Complaint.

> ### 2.   Plaintiffs Can State No Cause of Action Against the Non-Diverse Defendants.

Not only have Plaintiffs failed to argue that they have stated "colorable" claims against Defendants Pittman and Danzey, but as an additional and independent basis for denying Plaintiffs' Motion to Remand, the undisputed law shows that there is no "*reasonable possibility*" that Plaintiffs can establish any cause of action against the resident defendants Danzey and Pittman. *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998); *Legg,* 428 F.2d at 1325; *Gordon,* 2006 WL 2337002, *2-3.

> ### a.  No Cause of Action for Deceit.

Just like Plaintiffs' claims for fraud and suppression that fail to state fraud with particularity, Plaintiffs' claim for deceit fails specify "time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained." *Smith*, 860 So. 2d at 346-47. As such, Plaintiffs have failed to state a claim for deceit against any Defendant, but particularly, they have failed to state an actionable claim against the resident Defendants Pittman or Danzey.

**b. No Cause of Action for Negligence/Wantonness/Willfulness.**

Plaintiffs cannot recover for negligence, wantonness, or willfulness against the non-diverse Defendants because those Defendants, the bank's employees, owe the Plaintiffs no duties outside the terms of the Plaintiffs' loan agreements. *Cahaba Seafood, Inc., v. Central Bank of the South*, 567 So. 2d 1304 (Ala. 1990). Without a duty owed, the Plaintiffs can not recover for negligence, wantonness, or willfulness against the resident Defendants Pittman or Danzey.

**c. No Cause of Action for Breach of Fiduciary Duty.**

Plaintiffs have stated no claim for breach of fiduciary duty upon which relief can be granted. Under no facts would non-diverse Defendants Pittman or Danzey owe the Plaintiffs any duty separate or apart from the Plaintiffs' loan agreements. *Faith, Hope and Love, Inc. v. First Alabama Bank of Talladega County, N.A.*, 496 So. 2d 708, 711 (Ala. 1986). Further, there is no basis for imposing the higher duty that is required to prove a claim for breach of fiduciary duty. No cause of action has been stated, therefore, against the resident Defendants Pittman or Danzey for breach of fiduciary duty.

**d. No Cause of Action for Conversion.**

Plaintiffs have completely failed to state any claim for conversion against any party, but specifically, Plaintiffs have stated no cause of action for conversion against the non-diverse Defendants. Plaintiffs allege that certain money that was paid toward the Plaintiffs loans was somehow mishandled. There is no claim that the monies were "earmarked" or otherwise identifiable. Thus, no cause of action for conversion exists in Plaintiffs' Complaint against any Defendant, but specifically, no cause of action exists

against the resident Defendants Pittman or Danzey. *Lewis v. Fowler*, 479 So. 2d 725 (Ala. 1985).

### e. No Cause of Action for Breach of Contract.

Plaintiffs do not even purport to allege a cause of action against Pittman or Danzey for breach of contract. (See Complaint, p. 16). Yet, Plaintiffs do claim breach of contract with Ameris Bank. The only contract in existence between Plaintiffs and Defendant Ameris Bank is the $223,557.15 promissory note that was attached to Defendants' Notice of Removal. While Plaintiffs now state that they are claiming only certain amounts that were paid on their loan(s) were misapplied, Plaintiffs' Complaint makes no such limitation. In fact, the Complaint claims Defendant Ameris "failed to reasonably and adequately *procure*, *obtain*, *handle*, *maintain*, and/or otherwise *oversee* bank accounts, loans and/or other financial services, as well as monies, funds, and/or terms therein. . ." (See Complaint, p. 16, ¶ 3). Clearly, Plaintiffs' claim in their Complaint that the entire amount of the $223,557.15 that went to refinance their three loans was "mishandled" or "misapplied," despite their "protestations" to the contrary. Most importantly, however, Plaintiffs' have not even attempted to state their claim against Pittman or Danzey as individual Defendants, and there is no cause of action for breach of contract against the resident Defendants.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, this Court has jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount is controversy is met. Defendants believe oral argument would be beneficial to the Court in deciding this matter. Accordingly, Defendants respectfully request that this Court grant

oral argument on the Plaintiffs' Motion to Remand and that the Plaintiffs' Motion to

Remand be DENIED.

### *ORAL ARGUMENT REQUESTED*

Respectfully submitted,

/s/ William P. Gray, Jr.
WILLIAM P. GRAY, JR. (ASB-5268-R78W)
DOUGLAS N. ROBERTSON (ASB-1128-O76R)
Attorneys for Ameris Bank, Marvin Danzey, and
Harris O. Pittman, III

OF COUNSEL:
GRAY & ASSOCIATES, L.L.C.
3800 Colonnade Parkway, Suite 545
Birmingham, Alabama  35243
Telephone:  (205) 968-0900

## CERTIFICATE OF SERVICE

I certify that on the 6th day of July 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Leah Taylor, Esq.
Ted Taylor, Esq.
Taylor & Taylor
2130 Highland Avenue
Birmingham, Alabama  35205-4002

Will Lee, Esq.
Bill Lee, Esq.
Lee & McInish, P.C.
P.O. Box 1665
Dothan, Alabama  36302

/s/ William P. Gray, Jr.
Of Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

CARLTON G. SUTTON,                          )
SUTTON CONSTRUCTION &                       )
DRYWALL SERVICES, INC.,                     )
                                            )
     Plaintiffs,                            )
                                            )
v.                                          )    Case No. 1:07cv497-MHT-TFM
                                            )
AMERIS BANKING COMPANY d/b/a                )
AMERIS BANK, MARVIN DANZEY,                 )
GLENDA WILLIAMS,                            )
                                            )
     Defendants.                            )
                                            )

**AFFIDAVIT OF GLENDA F. WILLIAMS**

Before me, the undersigned authority, personally appeared Glenda F. Williams,
known to me, and first being duly sworn under oath, says as follows:

1.    My name is Glenda F. Williams. I am over the age of nineteen and
suffering from no known legal or mental disability.

2.    I make this Affidavit based on my own personal knowledge.

3.    I am currently the Loans Operation Manager at the Dothan Branch of
Ameris Bank.

4.    I have caused the loan records of Ameris Bank to be searched and have
supervised the search, and as a result of that search, I have ascertained that the sum of
thirty-eight thousand, one hundred seventy-five dollars ($38,175.00) was paid and
credited to the account of Carlton Sutton and/or Sutton Construction & Drywall, Inc.

5.      I have also ascertained that an additional sum of twelve thousand, ninety-eight dollars and seventy-five cents ($12,098.75) was paid by Carlton Sutton and/or Sutton Construction & Drywall, Inc. and credited according to his directions.

6.      Thus, the total amount that was paid and received by Ameris Bank was at least the sum of fifty thousand, two hundred seventy-three dollars and seventy-five cents ($50,273.75).

7.      I have also ascertained that on January 28, 2005, Carlton Sutton directed that the sum of sixty-five thousand, one hundred twenty dollars ($65,120.00) be taken out of the loan proceeds from the promissory note, which is attached hereto as Exhibit "A," in the amount of two hundred twenty-three thousand dollars ($223,000) and directed for it to be paid on the loan of Jimmy Lamar Danner, d/b/a SCSI, a sole proprietorship located in Ariton, Alabama.

Further, the Affiant saith not.


**STATE OF ALABAMA**                        )
**_____ COUNTY**                   )

*Glenda F. Williams*
**GLENDA F. WILLIAMS**

SWORN TO and subscribed before me on this the 6th day of July, 2007.

*Lori Shelley*
NOTARY PUBLIC          NOTARY PUBLIC STATE OF ALABAMA AT LARGE
                                    MY COMMISSION EXPIRES: Apr 2, 2009
My Commission Expires: BONDED THRU NOTARY PUBLIC UNDERWRITERS

(SEAL)

2

Exhibit "A"

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 3580005091-112 | Carlton G Sutton | | 01/28/05 | JG |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $223,557.15 | Not Applicable | 6.000% | 05/28/05 | Commercial |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
### (Commercial - Single Advance - Fixed Rate)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is January 28, 2005. The parties and their addresses are:

**LENDER:**
  **SOUTHLAND BANK**
  3299 Ross Clark Circle NW
  Dothan, Alabama 36303
  Telephone: (334) 671-4000

**BORROWER:**
  **CARLTON G SUTTON**
  P O Box 397
  Ariton, Alabama 36311

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

   A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

   B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, disclosures or notes, and this Note.

   D. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   E. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

2. **REFINANCING.** This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| November 5, 2002 | # 3580005664-101 | $70,120.00 |
| December 5, 2003 | # 3580005924-102 | $79,468.28 |
| April 29, 2004 | # 3580005091-111 | $76,035.57 |

The remaining balance of all notes listed in the table above is $223,127.15.

3. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$223,557.15 (Principal)** plus interest from January 28, 2005 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

4. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 6.000 percent (Interest Rate).

   A. **Interest After Default.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue on the unpaid Principal balance of this Note at 18.000 percent until paid in full.

   B. **Maximum Interest Amount.** Any amount assessed or collected under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

   C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Alabama usury laws under Ala. Code, title 8 chapt. 8.

   D. **Accrual.** During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

5. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

   A. **Refundable Fees and Charges.** Some or all of the following fees may be refunded if I pay this Note in full before the scheduled maturity date.
      **Interest Surcharge.** I agree to pay a refundable interest surcharge fee of $125.00. This fee will be withheld from the proceeds. If I prepay in full by any means within 90 days of the date of this Note you will refund or credit me with a pro rata portion of the interest surcharge, except that you may retain a minimum of $25.00. If this Note is prepaid in full after 90 days, the interest surcharge is fully earned and will not be refunded.

   B. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
      **Loan Origination.** A(n) Loan Origination fee of $305.00 payable from the loan proceeds.

6. **REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.



**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $5.00, whichever is greater. However, this charge will not be greater than $100.00. I will pay this late charge promptly but only once for each late payment.

**B. Returned Check Charge.** I agree to pay a fee not to exceed $29.00 for each check, negotiable order of withdrawal or draft I issue in connection with this Loan that is returned because it has been dishonored.

**7. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in a single payment of all unpaid Principal and accrued interest on May 28, 2005.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**8. PREPAYMENT.** I may prepay this Loan under the following terms and conditions. This loan may be subject to a $150.00 prepayment fee. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is consolidate loans.

**10. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 2nd Mtg 98 Lee Road, Opelika, Mtg Dated 12-11-02 Mtg Rec 01/09/03 Mtg Bk 2932 Pgs 255-261 filed w/Lee County JOP | Carlton Sutton |
| Mortgage - 3rd Mtg 32 W. Main, Ariton, Mtg Dated 01/14/02 Mtg Rec 01/16/02 Mtg Bk 351 Pgs 60-65 filed w/Dale County JOP | Carlton Sutton |
| Mortgage - 2nd Mtg on 32 W. Main, Ariton, Mtg Dated 12/10/01 Mtg Rec 01/14/02 Mtg Bk 350 Pgs 793-799 filed w/Dale County JOP | Carlton Sutton |
| Security Agreement - Carlton Sutton | Carlton Sutton |

**11. DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Insecurity.** You reasonably believe that you are insecure.

**12. DUE ON SALE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.



A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any instrument securing this Note.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. **Attachment.** You may attach or garnish my wages or earnings.

F. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**16. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**18. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

A. **Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Loan.

B. **Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

C. **Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for this Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**19. APPLICABLE LAW.** This Note is governed by the laws of Alabama, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**20. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Loan, or any number of us together, to collect this Loan. Extending this Loan or new obligations under this Loan, will not affect my duty under this Loan and I will still be obligated to pay this Loan. The duties and benefits of this Loan will bind and benefit the successors and assigns of you and me.

**21. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note is the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**22. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**23. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**24. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**25. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between



you and me.  I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**28. SIGNATURES.**  By signing under seal, I agree to the terms contained in this Note.  I also acknowledge receipt of a copy of this Note.

**BORROWER:**

_____ (Seal)
Carlton G Sutton
Individually

**LENDER:**

Southland Bank

By _____ (Seal)
Jerry Gulledge, Loan Officer/Branch Manager

# SECURITY AGREEMENT

DATE AND PARTIES. The date of this Security Agreement (Agreement) is January 28, 2005. The parties and their addresses are:

**SECURED PARTY:**
SOUTHLAND BANK
3299 Ross Clark Circle NW
Dothan, Alabama 36303

**DEBTOR:**
CARLTON G SUTTON
P O Box 397
Ariton, Alabama 36311

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** This Agreement will secure the following Secured Debts:

A. **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3560006091-112, dated January 28, 2005, from me to you, in the amount of $223,567.15.

B. **All Debts.** All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement. Nothing in this Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Agreement will not secure any debt for which you fail to give any required notice of the right of rescission. This Agreement will not secure any debt for which a future Agreement, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

C. **Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

**2. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.** The Property is described as follows:

A. **Accounts and Other Rights to Payment.** All rights I have now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not I have earned such payment by performance. This includes any rights and interests (including all liens and security interests) which I may have by law or agreement against any Account Debtor or obligor of mine.

B. **Motor Vehicle, Mobile Home, Sport Craft, or Trailer.** A Motor Vehicle of Make: FORD, Year: 1995, Model: F150 XLT, VIN: 1FTEF15N65NB35794.

C. **Specific Property.** Ucc-1 Dated 12/30/03 File# B-03-1111672-FS, Ucc-1 Dated 11/20/03 File# B-02-0938599-FS, and Ucc-1 Dated 01/23/04 File# B-02-0938696-FS filed w/ Secretary of State

**4. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing me or to which I am a party. My principal residence is located in Alabama. I will provide you with at least 30 days notice prior to any change in my name or principal residence location.

A. **Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5. DUTIES TOWARD PROPERTY.**

A. **Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

B. **Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to

©1996 Bankers Systems, Inc., St. Cloud, MN



you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**D. Additional Duties Specific to Accounts.** I will not settle any Account for less than its full value without your written permission. Until you tell me otherwise, I will collect all Accounts in the ordinary course of business. I will not dispose of the Accounts by assignment without your prior written consent. I will keep the proceeds from all the Accounts and any goods which are returned to me or which I take back. I will not commingle them with any of my other property. I will deliver the Accounts to you at your request. If you ask me to pay you the full price on any returned items or items retaken by me, I will do so. I will make no material change in the terms of any Account, and I will give you any statements, reports, certificates, lists of Account Debtors (showing names, addresses and amounts owing), invoices applicable to each Account, and other data in any way pertaining to the Accounts as you may request.

**E. Additional Duties Specific to Motor Vehicles, Sport Craft, or Trailers.** So long as I am not in default under this Agreement, the Motor Vehicle, Sport Craft, or Trailer portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, they may not be removed from the United States or Canada without your prior written consent, nor taken out of state permanently.

**6. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property. This insurance may include coverages not originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance.

**7. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

    **A.** demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

    **B.** enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

    **C.** file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

    **D.** compromise, release, extend, or exchange any indebtedness of an Account Debtor.

    **E.** take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

    **F.** endorse all payments by any Account Debtor which may come into your possession as payable to me.

    **G.** deal in all respects as the holder and owner of the Account Debtors' obligations.

**8. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

    **A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

    **B.** pay any rents or other charges under any lease affecting the Property.

    **C.** order and pay for the repair, maintenance and preservation of the Property.

    **D.** sign, when permitted by law, and file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

    **E.** place a note on any chattel paper indicating your interest in the Property.

    **F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

    **G.** handle any suits or other proceedings involving the Property in my name.

    **H.** prepare, file, and sign my name to any necessary reports or accountings.

    **I.** make an entry on my books and records showing the existence of this Agreement.

    **J.** notify any Account Debtor of your interest in the Property and tell the Account Debtor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Agreement.



If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**9. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Insecurity.** You reasonably believe that you are insecure.

**10. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any instrument evidencing or pertaining to the Secured Debts.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**G. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell the Property as provided by law. You may apply what you receive from the sale of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the sale of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Alabama Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing.

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

**H. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**I. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. PERFECTION OF SECURITY INTEREST.** I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**13. APPLICABLE LAW.** This Agreement is governed by the laws of Alabama, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Alabama, unless otherwise required by law.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. The duties and benefits of this Agreement will bind and benefit the successors and assigns of you and me.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement is the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**17. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES



section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

DEBTOR:

_____ (Seal)
Carlton G Sutton
individually

SECURED PARTY:

Southland Bank

By _____ (Seal)
Jerry Gulledge, Loan Officer/Branch Manager